Document 1

Document 2

Document 3

JUDGMENT

FILED: April 5, 2006

UNITED STATES COURT OF APPEALS

for the

Fourth Circuit

No. 05-1392
CA-04-2917-WDQ

KAREN WILSON

Plaintiff - Appellant

v.

DRAPER & GOLDBERG, P.L.L.C.; L. DARREN GOLDBERG

Defendants - Appellees

--------------------
Appeal from the United States District Court for the
District of Maryland at Baltimore
--------------------

In accordance with the written opinion of this Court filed this day, the Court reverses the judgment of the District Court. This case is remanded to the District Court for further proceedings consistent with the Court's opinion.

A certified copy of this judgment will be provided to the District Court upon issuance of the mandate. The judgment will take effect upon issuance of the mandate.

/s/ Patricia S. Connor
_____
CLERK

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

KAREN WILSON,

　　　　　*Plaintiff-Appellant,*

　　　　v.

DRAPER & GOLDBERG, P.L.L.C.; L.
DARREN GOLDBERG,

　　　　　*Defendants-Appellees.*

No. 05-1392

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(CA-04-2917-WDQ)

Argued: December 1, 2005

Decided: April 5, 2006

Before WIDENER, WILKINSON, and TRAXLER, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Traxler wrote
the majority opinion, in which Judge Wilkinson joined. Judge Wid-
ener wrote a dissenting opinion.

---

### COUNSEL

**ARGUED:** Howard Robert Erwin, Jr., Baltimore, Maryland, for
Appellant. Rita Ting-Hopper, DRAPER & GOLDBERG, P.L.L.C.,
Leesburg, Virginia, for Appellees. **ON BRIEF:** Scott R. Grigsby,
DRAPER & GOLDBERG, P.L.L.C., Leesburg, Virginia, for Appel-
lees.

## OPINION

TRAXLER, Circuit Judge:

Karen Wilson brought this action against the law firm of Draper & Goldberg, P.L.L.C., and one of its lawyers, L. Darren Goldberg (collectively, "Defendants"), for violation of the Fair Debt Collection Practices Act (the "Act") in connection with Defendants' initiation of foreclosure proceedings against her. Defendants filed a motion to dismiss for failure to state a claim, arguing that they were not covered by the Act. The district court treated the motion as one for summary judgment, and granted it in favor of Defendants. The district court concluded that, because Defendants were acting as substitute trustees foreclosing on a deed of trust, they could not be "debt collectors" under the Act and that any actions they took in connection with the foreclosure could not be challenged as violations of the Act. Wilson appeals, and we reverse and remand.

### I.

We review a district court's grant of summary judgment de novo, viewing any facts and inferences drawn from them in the light most favorable to Wilson, the nonmoving party. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996). The questions we address in this case are matters of statutory interpretation based on essentially undisputed facts. As a result, our review is plenary. *See United Energy Servs. v. Federal Mine Safety & Health Admin.*, 35 F.3d 971, 974 (4th Cir. 1994).

Chase Manhattan Mortgage Corporation ("Chase") retained Defendants to foreclose on Wilson's property due to her alleged failure to make mortgage payments. Defendants wrote Wilson on September 2, 2003, to announce that she was in default on her loan and that they were preparing foreclosure papers. Defendants' letter stated that "[f]ederal law requires us to advise you that this letter is written pursuant to the provisions of the Fair Debt Collection Practices Act . . . . [T]his letter is an attempt to collect a debt." J.A. 43. Defendants also sent Wilson a "VALIDATION OF DEBT NOTICE" pursuant to the Act, which gave specific information concerning "the amount of the debt," the "creditor to whom the debt is owed," and the procedure for

validating the debt. J.A. 44. The notice, however, expressly stated that Defendants were not "debt collectors" or acting in connection with the collection of a "debt." J.A. 44. Shortly after receiving the letter, Wilson wrote Defendants to dispute the debt and to request that they verify it with Chase.

On September 11, 2003, Defendants commenced foreclosure proceedings. One week later, Wilson's attorney advised Defendants that he represented Wilson and that Defendants should only communicate with him regarding the dispute. Nevertheless, on October 6, 2003, Defendants' "Sales Department" wrote directly to Wilson, not her attorney, to inform her that the foreclosure sale of her home would go forward on October 17, 2003. The letter again stated that it was an attempt to collect a debt. J.A. 45.

On October 9, 2003, Wilson's attorney requested a complete statement of Wilson's account indicating all interest, late charges and other charges, the interest rate, and all payments since the inception of the mortgage. In what Defendants claim was a response to Wilson's attorney, Defendants wrote directly to Wilson on October 15, 2003, providing the "amount to reinstate the above account," a balance of payments due, and instructions that any funds paid should be by cashiers check made payable to Chase and sent to Defendants. J.A. 47. As with previous letters, the letter stated "This notice is an attempt to collect a debt." J.A. 47. Prior to completing the foreclosure, Chase and Wilson resolved their dispute.

In 2004, Wilson commenced this action, alleging that Defendants violated the Act by failing to verify the debt, by continuing collection efforts after she had contested the debt, and by communicating directly with her when they knew she was represented by counsel. Defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted, arguing that they were not acting in connection with a "debt" and that they were not "debt collectors" as those terms are defined by the Act.

The district court treated the motion as one for summary judgment because, in addition to the pleadings, it considered an affidavit and exhibit submitted by Defendants showing that the law firm was acting

as a substitute trustee on a deed of trust when it communicated with
Wilson. The district court granted summary judgment in favor of
Defendants, ruling that "[t]rustees foreclosing on a property pursuant
to a deed of trust are not 'debt collectors' under the [Act]," J.A. 153,
and that "actions taken by a trustee in foreclosing on a property pursu-
ant to a deed of trust may not be challenged as [Act] violations," J.A.
154.

## II.

Because we believe the district court misinterpreted the scope of
the Act, and conclude that trustees, including attorneys, acting in con-
nection with a foreclosure can be "debt collectors" under the Act, we
reverse and remand.

### A.

To be a "debt collector," there must first be a "debt." The Act
defines a "debt" as:

> any obligation or alleged obligation of a consumer to pay
> money arising out of a transaction in which the money,
> property, insurance, or services which are the subject of the
> transaction are primarily for personal, family, or household
> purposes, whether or not such obligation has been reduced
> to judgment.

15 U.S.C.A. § 1692a(5) (West 1998).

We disagree with Defendants' argument that they were not acting
in connection with a "debt." Defendants notified Wilson that she was
in "default in [her] Deed of Trust Note payable to the Lender . . .
[and] that the Lender [had] accelerated the *debt*." J.A. 43 (emphasis
added). Defendants informed Wilson that her failure to make mort-
gage payments entitled Chase to immediate payment of the balance
of her loan, as well as fees, penalties, and interest due. These amounts
are all "debts" under the Act, because they were "obligation[s] . . . to
pay money arising out of a transaction in which the . . . property . . .
which [is] the subject of the transaction [is] primarily for personal,
family, or household purposes." 15 U.S.C.A. § 1692a(5).

Defendants contend that foreclosure by a trustee under a deed of trust is not the enforcement of an obligation to pay money or a "debt," but is a termination of the debtor's equity of redemption relating to the debtor's property. In essence, Defendants argue that Wilson's "debt" ceased to be a "debt" once foreclosure proceedings began. Defendants rely on reported and unreported district court decisions, including *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp.2d 1188 (D. Ore. 2002), which reasoned that "foreclosing on a deed of trust is an entirely different path [than collecting funds from a debtor]. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property." *Id.* at 1204; *see also Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp. 2d 716, 722 (N.D. W.Va. 1998) (stating that, to the extent the *pro se* complaint could be read to allege violation of the Act within the statute of limitations, the Act would not apply "[s]ince the trustees were not collecting on the debt at that time but merely foreclosing on the property pursuant to the deed of trust"), *aff'd*, 173 F.3d 850 (4th Cir. 1999) (unpublished table decision).

We disagree. Wilson's "debt" remained a "debt" even after foreclosure proceedings commenced. *See Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 234 (3d Cir. 2005) ("The fact that the [Pennsylvania Municipal Claims and Tax Liens Act] provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt."). Furthermore, Defendants' actions surrounding the foreclosure proceeding were attempts to collect that debt. *See Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998) (concluding that an eviction notice required by statute could also be an attempt to collect a debt); *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (Colo. 1992) ("[A] foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt.").

Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods. *See Piper*, 396 F.3d at 236 ("We agree with the District Court that if a collector were able to avoid liability under

the [Act] simply by choosing to proceed *in rem* rather than *in perso-nam*, it would undermine the purpose of the [Act].")(internal quotation marks omitted).

Furthermore, in this case, Defendants' October 15 letter to Wilson contained a specific request for money to "reinstate the above account" even after the foreclosure proceedings began. J.A. 47. The letter instructed Wilson to pay the amount, over half of which was for foreclosure fees, by cashiers check made payable to Chase and to send it to Defendants. By sending a letter seeking payment of an amount to "reinstate the above account" and directing Wilson to pay that amount by cashiers check, Defendants sought to collect an "obli-gation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C.A. § 1692a(5); *cf. Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989) ("The letter unequiv-ocally states that [the attorney] himself is collecting the money. Nowhere is it intimated that [the debtor] was to send money to [the lender] directly. Thus [the attorney] is a debt collector.").[1]

Thus, Defendants attempted to collect a "debt."

## B.

We now turn to Defendants' argument that, even if they were act-ing in connection with a debt, they fall under an exception from the general definition of "debt collector." The Act generally defines a "debt collector" as

> any person who uses any instrumentality of interstate com-merce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly col-

---

[1]We cannot accept Defendants' argument that the letter was in response to a request by Wilson's lawyer. Defendants' letter was sent to Wilson and not her attorney, made no reference to her attorney's request, was not signed by anyone, and failed to provide much of the information her lawyer requested.

WILSON v. DRAPER & GOLDBERG                    7

lects or attempts to collect, directly or indirectly, debts owed
or due or asserted to be owed or due another.

15 U.S.C.A. § 1692a(6) (West 1998).

Defendants argue they fall under the exception to "debt
collector" that covers "any person collecting or attempting to
collect any debt . . . due another to the extent such activity . . .
is incidental to a bona fide fiduciary obligation." 15 U.S.C.A.
§ 1692a(6)(F)(i) (West 1998). Defendants claim that, because
they were acting as trustees foreclosing on a property pursuant
to a deed of trust, they were fiduciaries benefitting from the
exception of § 1692a(6)(F)(i).

We disagree. The fact that trustees foreclosing on a deed of
trust are fiduciaries only partially answers the question.
Rather, the critical inquiry is whether a trustee's actions are
"incidental to a bona fide fiduciary obligation." *Id.* We
conclude that a trustee's actions to foreclose on a property
pursuant to a deed of trust are not "incidental" to its fiduciary
obligation. Rather, they are central to it. Thus, to the extent
Defendants used the foreclosure process to collect Wilson's
alleged debt, they cannot benefit from the exemption contained
in § 1692a(6)(F)(i). *Cf.* FTC Official Staff Commentary On
the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097,
50103 (Fed. Trade Comm'n Dec. 13, 1988) ("The exemption
(i) for bona fide fiduciary obligations or escrow arrangements
applies to entities such as trust departments of banks, and
escrow companies. It does not include a party who is named as
a debtor's trustee solely for the purpose of conducting a
foreclosure sale (i.e., exercising a power of sale in the event of
default on a loan).").

Nor is it relevant that Defendants were attorneys. Generally
speaking, all lawyers are fiduciaries for their clients. As
discussed above, however, the more important question is
whether Defendants' actions were "incidental" to their
fiduciary obligation. We conclude that they are not.
Furthermore, it is well-established that lawyers can be "debt
collectors" even if conducting litigation. *See Heintz v.
Jenkins*, 514 U.S. 291, 299 (1995) ("[T]he Act applies to
attorneys who 'regularly' engage in consumer-debt-collection
activity, even when that activity consists of litigation."). In
fact, the Act as originally enacted exempted attorneys from its
coverage, but Congress amended the Act

in 1986 "to provide that any attorney who collects debts on behalf of a client shall be subject to the provisions of [the] Act." Pub. L. No. 99-361, 100 Stat. 768 (codified at 15 U.S.C.A. 1692a); *see also Carroll v. Wolpoff & Abramson*, 961 F.2d 459, 461 (4th Cir. 1992) (discussing repeal of the attorney exemption). If the principal purpose of a lawyer's work is the collection of debts, he is a "debt collector" under the Act. *See Scott v. Jones*, 964 F.2d 314, 316-17 (4th Cir. 1992).

Thus, Defendants cannot benefit from § 1692a(6)(F)(i)'s exception to the definition of "debt collector" merely because they were trustees foreclosing on a property pursuant to a deed of trust.

C.

Defendants also allege that they cannot be held liable as charged in the complaint because Wilson has only alleged violations of portions of the Act that do not apply to them. They refer to a portion of the definition of "debt collector" that states, "[f]or the purpose of section § 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C.A. § 1692a(6). According to Defendants, because they are engaged in a business "the principal purpose of which is the enforcement of security interests," they can only be a "debt collector" under the one section expressly provided, 15 U.S.C.A. § 1692f(6). Because Wilson alleged no violation of § 1692f(6), Defendants argue that they cannot be liable under the Act.

We disagree. This provision applies to those whose *only* role in the debt collection process is the enforcement of a security interest. *See Jordan v. Kent Recovery Servs., Inc.*, 731 F. Supp. 652, 657 (D. Del. 1990)("It thus appears that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA except for the provisions of § 1692f(6)."). In other words, this provision is not an exception to the definition of debt collector, it is an inclusion to the term debt collector. It serves to include as debt collectors, for the purposes of § 1692f(6), those who only enforce security interests. It does not exclude those who enforce security interests but who also fall under the general definition of

"debt collector." *See Piper*, 396 F.3d at 236 ("Section 1692a(6) thus recognizes that there are people who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts.").

Thus, if Defendants meet the statutory definition of "debt collector," they can be covered by all sections of the Act, not just § 1692f(6), regardless of whether they also enforce security interests.

### III.

The district court incorrectly concluded that Defendants could not be held liable under the Act. We hold that Defendants' foreclosure action was an attempt to collect a "debt," Defendants are not excluded from the definition of "debt collector" under 15 U.S.C.A. § 1692a(6)(F)(i) merely because they were acting as trustees foreclosing on a property pursuant to a deed of trust, and Defendants can still be "debt collectors" even if they were also enforcing a security interest. As a result, we reverse and remand.

On remand, Wilson can show that Defendants meet the definition of "debt collector" by demonstrating that they use "any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or . . . regularly collect[ ] or attempt[ ] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6); *see also Heintz*, 514 U.S. at 294 ("[A] lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts."); *Crossley*, 868 F.2d at 569-70 (relying on volume of attorney's mortgage foreclosure actions to show he was a debt collector); *Shapiro*, 823 P.2d at 124 ("Since a foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt, those who engage in such foreclosures are included within the definition of debt collectors if they otherwise fit the statutory definition.").

Our decision is not intended to bring every law firm engaging in foreclosure proceedings under the ambit of the Act. Nevertheless, it is well-established that the Act applies to lawyers "who 'regularly' engage in consumer-debt-collection activity, even when that activity

consists of litigation." *Heintz*, 514 U.S. at 299. Congress enacted the
Act to "eliminate abusive debt collection practices by debt collectors."
15 U.S.C.A. 1692(e) (West 1998); *see also Carroll*, 961 F.2d at 460.
As such, lawyers who regularly engage in consumer-debt-collection
activity should not be allowed to thwart this purpose merely because
they proceed in the context of a foreclosure.[2]

Moreover, Defendants allegedly initiated over 2300 foreclosure
actions in Maryland in 2003. There is no reason that a law firm han-
dling this volume of foreclosures would be any more ill-equipped to
comply with the Act than a more "traditional" debt collection agency.
Defendants appear to have been aware that the Act could apply to
their conduct, as their letters to Wilson contained clear references to
the Act, including the notice "this is an attempt to collect a debt." *See*
15 U.S.C.A. § 1692e(11) (West 1998).

We reverse the district court's grant of summary judgment to
Defendants and remand for proceedings consistent with this opinion.

*REVERSED AND REMANDED*

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

I begin with the full text of the fiduciary exception to the statutory
definition of "debt collector":

The term [debt collector] does not include—

---

[2]Of course, whether a law firm or not, a company's own efforts to col-
lect overdue payments from its own delinquent clients would not ordinar-
ily make it a "debt collector" under the Act, which specifically refers to
those who collect debts "owed or due or asserted to be owed or due
*another*." 15 U.S.C.A. § 1692a(6) (emphasis added); *see also Nielsen v.
Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002) ("[C]reditors who are
attempting to collect their own debts generally are not considered debt
collectors under the statute.").

>   (F) any person collecting or attempting to collect any debt
>   owed or due or asserted to be owed or due another to the
>   extent such activity (I) is incidental to a bona fide fiduciary
>   obligation or a bona fide escrow arrangement.

15 U.S.C. 1692a(6). It is undisputed that defendants were trustees on
the deed of trust. (JA 22, 41.) This means that they were fiduciaries
as a matter of law. See *Bunn v. Kuta*, 674 A.2d 26, 32 (Md. Ct. Spec.
App. 1996); *Whitlow v. Mountain Trust Bank*, 207 S.E.2d 837, 840
(Va. 1974).[1] And there is no reason to doubt their bona fides. But the
majority offers a different reason to avoid the exception: defendants'
actions were "central" to their fiduciary duties, not "incidental" as the
statute provides. Slip op. 7.

   Such a construction of the statute is not logical, I suggest. "Inciden-
tal" means "occurring merely by chance or without intention or calcu-
lation" or "being likely to ensue as a chance or minor consequence."
*Merriam-Webster Collegiate Dictionary* 586 (10th ed. 2000). And
"central" is defined as "of cardinal importance: essential, principal."
*Id.* at 185. Even assuming that a foreclosure is "central" to the defen-
dants' duties, the majority conclusion that a central task incident to
the duty is not exempted does not follow from the premise. If the
exception covers the minor unintended acts relating to incidental fidu-
ciary duties, it must cover the principal acts as well. Otherwise the
exception would accomplish very little, for the majority definition
excludes "other bona fide fiduciaries" which are included in the Sen-
ate Report, infra.[2]

   The legislative history of the fiduciary exception further erodes the
majority reasoning. It shows that the original House version of the bill
did not include the exception for fiduciaries. See H.R. Rep. No. 95-

---

[1]The offices of Draper & Goldberg are in Virginia, the deed of trust
in question is in Maryland.

[2]The appellate cases mentioning the exception do not bear upon this
case. See *Pelfrey v. Educ. Credit Mgmt. Corp.*, 208 F.3d 945 (11th Cir.
2000) (per curiam), aff'g 71 F. Supp. 2d 1161 (N.D. Ala. 1999) (apply-
ing exception to assignee of guarantor of defaulted student loan); *Buck-
man v. Am. Bankers Ins. Co. of Fla.*, 115 F.3d 892, 895 (11th Cir. 1997)
(not considering exception).

131, at 4, 11, 17-18 (Mar. 29, 1977). Only later did the Senate add
it. See 123 Cong. Rec. at 27384 (Aug. 5, 1977) (text of Senate ver-
sion); see also *id.* at 28109-13 (House adopting Senate amendments).
So including the exception within the statute was a deliberate act.
Moreover, the Senate committee report explained the purpose of the
amendment:

> [T]he committee does not intend the definition [of debt col-
> lector] to cover the activities of trust departments, escrow
> companies, *or other bona fide fiduciaries*. (Italics added.)

S. Rep. No. 95-382, at 3, reprinted at 1977 U.S.C.C.A.N. 1695, 1698;
see also *id.* at 1701. This explanation is on point and unambiguous.
We should not ignore such unambiguous text, especially when it is
augmented by the balance of the legislative history referred to.

   Yet the FTC Staff Commentary, which is the only authority partic-
ular to the fiduciary exception cited by the majority, does just that.
The Commentary provides that the exception does not apply to trust-
ees named "solely for the purpose of conducting a foreclosure sale."[3]
This innovation conflicts not only with the statutory text but also with
the Senate report set forth above. We have declined to follow the
Commentary in past FDCPA cases upon discerning such a conflict,
see *Scott v. Jones*, 964 F.2d 314, 317 (4th Cir. 1992), and we should
do so again here. Our obligation not to follow the FTC Commentary
is reinforced by the Commentary's self-doubt which appears at the
beginning of the Commentary. Reciting that the Supreme Court has
held that the Commentary was not binding and not entitled to defer-
ence when it conflicted with the plain language of the statute, the
Commentary continued:

> "[I]t is not clear whether the FTC has the authority to issue
> the Commentary [and] courts have little difficulty disregard-
> ing Commentary positions [viewed] as incorrect." JA 129,
> see *Heintz v. Jenkins*, 514 U.S. 291 (1995).

---

[3]Limiting by their appointment the duty of the trustees to be "*solely* for
the purpose of conducting a foreclosure sale" is not shown in the record
in this case. (Italics added.)

Tellingly, even this self-abnegation *over*states the FTC's authority under the Act which the statute itself limits:

> Neither the [Federal Trade] Commission nor any other agency referred to in subsection (b) of this section may promulgate trade regulation rules or other regulations with respect to the collection of debts by debt collectors as defined in this subchapter.

15 U.S.C. § 1692l(d). This provision, like the fiduciary exception, is unambiguous. So is its legislative history:

> "I want to make a special point: No Federal agency will write regulations for this legislation." 123 Cong. Rec. 10241 (Apr. 4, 1977) (statement of Rep. Annunzio).

And § 1692l(d) too, was itself an amendment. See *id*. at 10255 (statement of Rep. Rousselot noting amendment); see also the Senate Report, 1977 U.S.C.C.A.N. at 1703, which describes making of the FTC regulations as "prohibited." For various reasons given by courts which have cited the FTC Commentary, they decline to give it *Chevron* deference,[4] instead analyzing it as contrary to the statute or in terms of power to persuade, or lack thereof. See, e.g., *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 493 n.1 (5th Cir. 2004); *Scott*, supra, 964 F.2d at 317. But the majority relies upon the FTC Commentary. This, despite the fact that the single sentence deemed dispositive does not explain, or pretend to explain, the legislative history including the Senate Report, rather it contradicts the statutory text and the Senate report as if Congress were not the principal instrument of public policy.

> " . . . it is equally—and emphatically—the exclusive province of the Congress not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation." *Tenn. Valley Authority v. Hill*, 437 U.S. 153, 194 (1978).

---

[4]*Chevron USA v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

Even setting aside our duty to look first to Congress, I can think of no rationale for the agency's position other than a Shakespearean distrust of lawyers. And the Commentary's other policy flaws are plain: for instance, it fails to recognize that the duty of a lawyer-trustee under such a deed of trust runs to the property and, as well, to the borrower and the lender. See, e.g., *White v. Simand*, 831 A.2d 517, 524-25 (Md. Ct. App. 2003); *Powell v. Adams*, 18 S.E.2d 261, 262-63 (Va. 1942). This difference between a lawyer-trustee and a lawyer who is merely a debt collector, although patent, is not explained.[5]

Accordingly, I would affirm.

---

[5]The trustee, for example, must publicly account for the distribution of the proceeds of the sale. See generally *In re: Trustee's Sale of the Property of Willie Brown, et al.*, 67 Va. Cir. 204 (Circuit Court of the City of Norfolk, 2005).

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

NOTICE OF JUDGMENT
April 5, 2006

TO:          Howard Robert Erwin Jr., Esq.
             Scott Richard Grigsby, Esq.
             Rita Ting-Hopper, Esq.

             Judgment was entered this date in Case Number(s):   05-1392

             The Court's decision is enclosed.

PETITION FOR REHEARING (FRAP 40)
PETITION FOR REHEARING EN BANC (FRAP 35)

Filing       A petition must be received in the clerk's office within 14
Time         days after judgment to be timely. There are three exceptions
             to this rule:

             (1)  In all civil cases in which the United States or an agency
             or officer thereof is a party, any petition for rehearing must
             be received in the clerk's office within 45 days after entry of
             judgment.

             (2)  The Court may grant an extension of time or leave to file a
             petition for rehearing out of time if the party establishes that
             the delay resulted from the death or serious illness of counsel
             or a family member (or of a party or family member in pro se
             cases) or other circumstances wholly beyond the control of counsel
             or a party proceeding without counsel.

             (3)  Prisoner petitions are deemed filed when delivered to
             prison authorities.

             If a petition for rehearing en banc is to be filed, it must be
             filed at the same time and in the same document as the petition
             for rehearing and must be clearly identified in the title.

             Each case number to which the petition applies must be listed
             on the petition, even in companion or consolidated cases.
             Failure to list the individual case numbers on the petition
             will result in the unidentified cases proceeding to mandate
             even if a timely petition for rehearing has been filed in a
             companion or consolidated case.

             A timely filed petition for rehearing or petition for rehearing
             en banc will stay the mandate and toll the running of time for
             filing a petition for writ of certiorari.

Purpose      A petition should only be made to direct the Court's attention
             to one or more of the following situations:

             1. A material fact or law overlooked in the decision.
             2. A change in the law which occurred after the case was submitted
                and which was overlooked by the panel.
             3. The opinion is in conflict with a decision of the United States
                Supreme Court, this Court, or another court of appeals, and the
                conflict is not addressed in the opinion.

4. The proceeding involves one or more questions of exceptional importance.

Statement of Counsel  
A petition shall contain an introduction stating that, in counsel's judgment, one or more of the situations exist as described in the above "Purpose" section. The points to be raised shall be succinctly listed in the statement.

Form  
The 15 page limit allowed by the Rule shall be observed. The Court requires 4 copies of the petition (20 copies of a petition for rehearing en banc), and a copy of the Court's opinion must be attached to each copy of the petition.

## BILL OF COSTS (FRAP 39)

Filing Time  
A party to whom costs are allowed, who desires taxation of costs, shall file a bill of costs on or before 04/19/06.

## MANDATE (FRAP 41)

Issuance Time  
In original proceedings before this Court, there is no mandate. Unless the Court shortens or extends the time, in all other cases, the mandate issues 7 calendar days after the expiration of the time for filing a petition for rehearing. A timely petition for rehearing, petition for rehearing en banc, or motion to stay the mandate will stay the issuance. If the petition or motion is denied, the mandate will issue 7 calendar days later. If a stay of mandate is sought, only the original of a motion need be filed.

Stay  
A motion for stay of the issuance of the mandate shall not be granted simply upon request. Ordinarily the motion will be denied unless it would not be frivolous or filed merely for delay and would present a substantial question or otherwise set forth good or probable cause for a stay.

## CRIMINAL CASES (Plan in Implementation of the CJA)

Criminal  
In criminal cases, counsel must inform the defendant in writing of the right to file a petition for writ of certiorari from an adverse decision of this Court. Counsel appointed under the Criminal Justice Act must file their vouchers within 60 days of entry of judgment, denial of a petition for rehearing, or the grant or denial of a petition for writ of certiorari, whichever is later.

## PETITION FOR WRIT OF CERTIORARI  (Sup.Ct.R. 13)

Filing Time  
Review on writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only for compelling reasons. The petition must be filed in the United States Supreme Court within 90 days of this Court's entry of judgment. The time does not run from the issuance of the mandate. If a petition for rehearing is timely filed, the time runs from the denial of that petition. Content, fees, and number of copies of a petition for writ of certiorari are governed by the Rules of the United States Supreme Court.